**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 27 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

COMMODITY FUTURES TRADING
COMMISSION,

     Plaintiff-Appellee,

v.

WALL STREET UNDERGROUND,
INC., a Delaware corporation; DEREK
ABRAHAMS; NICHOLAS A.
GUARINO,

     Defendants,

and

WEB FULFILLMENT CENTRE,
INC., a Delaware Corporation;
FRANK ASARO,

     Defendants-Appellants.

04-3131
(D.C. No. 03-CV-2193, CM)
(District of Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL,** Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**KELLY**, Circuit Judge.

Pursuant to 7 U.S.C. § 13a-1(a), the Commodity Futures Trading

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Commission ("Commission") filed, on April 22, 2003, in the United States District Court for the District of Kansas a Complaint for Injunctive and Other Equitable Relief and for Civil Penalties under the Commodity Exchange Act (the "Act"), against Wall Street Underground, Inc. ("Wall Street") and Web Fulfillment Centre, Inc. ("Web"), both Delaware corporations, and Derek Abrahams, Frank Asaro, and Nicholas A. Guarino. The complaint charged the defendants with repeated violations of the Act, namely sections 4o(1)(A) and 4o(1)(B), codified at 7 U.S.C. §§ 6o(1)(A) and 6o(1)(B), and sought a preliminary and permanent injunction against all of the defendants. At the same time, the Commission sought, and obtained, an ex parte restraining order against the defendants, which froze assets and barred the destruction of books and records.

On June 27, 2003, the district court held a one-day evidentiary hearing on the Commission's request for a preliminary injunction. Of the five named defendants, only Web and Asaro made appearances. Whether the other three defendants named in the complaint were served is not clear from the record before us. On July 18, 2003, the district court, in a detailed memorandum and order, entered a preliminary injunction against all defendants, which order now appears as 281 F.Supp.2d 1260 (D. Kan. 2003). Web and Asaro appeal that order. The other defendants named in the complaint are not parties to this proceeding.

In short, the complaint charged all defendants with fraudulently promoting,

2

marketing and selling commodity trading advice by means of mail and electronic

delivery of promotional materials, in violation of the Act's anti-fraud provisions.

(Wall Street's electronics service, for example, cost the subscriber $5,000 per

year.) The district court, in its order, summarized the provisions of the Act with

which we are here concerned, as follows:

> The Act provides in pertinent part that it is unlawful for a commodity trading advisor, by use of the mails or any means or instrumentality of interstate commerce: 1) "to employ any device, scheme, or artifice to defraud any client or prospective client or participant;" or 2) "to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant." *See* 7 U.S.C. §§ 6*o*(1)(A) and 6*o*(1)(B). Under the Act, a commodity trading advisor is defined as any person who, for compensation or profit, engages in the business of advising others, directly or through publications, writings or electronic media, as to the value or the advisability of trading in contracts of sale of a commodity for future delivery, commodity options or leverage transactions, or, as part of a regular business, issues or promulgates analyses or reports regarding the same. *See* 7 U.S.C. § 1a(6)(A).

Before considering the issues raised on appeal by Web and Asaro, we shall

first refer to the order of the district court.

In the district court, Web and Asaro argued that they were incapable of

violating the Act because they did not meet the definition of a commodity trading advisor as set forth in the Act. The district court agreed with Web and Asaro that neither of them came within the statutory definition of a commodity trading advisor. However, at the same time, the district court concluded that Wall Street and Guarino did come within the statutory definition of a commodity trading advisor and discussed at some length its reasons for so holding. The district court then proceeded to consider whether the Commission nevertheless had a right to a preliminary injunction against Web and Asaro under the "common enterprise" or "controlling person" theories. Under the "common enterprise" theory, the district court stated that where one or more corporate entities operate in a common enterprise, each may be held liable for the deceptive acts and practices of the other. On this basis the district court determined that the Commission was entitled to a preliminary injunction against Web.

As to Asaro, the district court concluded that he was not a part of the "common enterprise," but that, notwithstanding, under the "controlling person" theory, both he and Abrahams, the latter not being a party to this appeal, "had control of the entities within the enterprise and lack of good faith or knowing inducement of the acts constituting the violation." The district court went on to state that a "controlling person acts in bad faith if he does not 'maintain a reasonably adequate system of internal supervision and control . . . or [does] not

4

enforce with any reasonable diligence such system.'" The court noted that Asaro "created and is president of defendant Web" and further "controlled the day-to-day operations of defendant Web."

At the hearing on the preliminary injunction, the Commission called one Donald Nash, an investigator for the Commission, and one Larry Larsen, an investigator employed by the Kansas Attorney General's office. As mentioned above, Asaro testified in his own behalf, and also called a person who subscribed to the "services" of Wall Street and he testified concerning his personal experience with that company. In addition, numerous exhibits and affidavits were before the court.

On appeal, Web and Asaro argue there was insufficient evidence to support any injunction against either, that the definition of "commodity trading advisor" is unconstitutionally vague, and that, in any event, there was insufficient evidence to show that either Wall Street or Guarino were commodity trading advisors. Further, the defendants argue that the injunction constituted a "prior restraint" on their First Amendment Freedoms and was overly broad. We are not persuaded.[1]

---

[1]On appeal, the Commission argues that several of these matters were not raised in the district court and hence should not be considered on appeal. However, the Commission also argues that, in the alternative, the record supports the district court's preliminary injunction. We prefer to dispose of the appeal on the latter ground. In this connection, we note that counsel for appellants was not counsel at trial.

We review a district court's issuance of a preliminary injunction for abuse of discretion. *Soskin v. Reinertson,* 353 F.3d 1242, 1247 (10th Cir. 2004). *See also Atchison, Topeka & Santa Fe Ry Co. v. Lennen*, 640 F.2d 255, 260 (10th Cir. 1981). Our review of the record indicates that the district court did not abuse its discretion.

It should be emphasized that we are here concerned with an appeal from a preliminary injunction and there is still pending, in the district court, the Commission's request for a permanent injunction. The function of a preliminary injunction is to preserve the status quo pending a final determination of the rights of the parties. *Lennen* at 260. We have said that a preliminary injunction should issue "when the evidence shows that the defendants are engaged in, or about to be engaged in, the acts or practices prohibited by a statute which provides for injunctive relief to prevent such violations . . . ." *Mical Communications, Inc. v. Sprint Telemedia, Inc.*, 1 F.3d 1031, 1035 (10th Cir. 1993) (citing *Lennen*, 640 F.2d at 259). In *Continental Oil Co. v. Frontier Ref. Co.* 338 F.2d 780, 781 (10th Cir. 1964), we also stated that in order to obtain a preliminary injunction it is not necessary that the plaintiff's right to a favorable decision on his request for a permanent injunction after trial is "absolutely certain" and "wholly without doubt." *See also Lennen*, 640 F.2d at 261 (noting that "it is not necessary that plaintiffs show positively that they will prevail on the merits before a preliminary injunction

6

may be granted."

We think the Commission has met that test and under such circumstances, we need not discuss in detail the evidence presented at the hearing on the motion for a preliminary injunction. In this regard, in *Continental Oil*, 338 F.2d at 782 we spoke as follows:

> It would serve no useful purpose to discuss in detail the evidence presented at the hearing on the motion for preliminary injunction. Suffice it to say that we have examined the allegations of the complaint and motion and the affidavits and we are convinced that the lower court did not abuse its discretion in issuing the preliminary injunction.

Judgment affirmed and case remanded with directions that, upon request, the district court shall expeditiously hear, and determine, the Commission's request for a permanent injunction.

ENTERED FOR THE COURT,


Robert H. McWilliams
Senior Circuit Judge